# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| AYMAN S. AMARA, | : | |
| Plaintiff, | : | Case No.: 3:08CV0378 |
| | | Case No.: 3:08CV0427 |
| v. | : | |
| | | District Judge Walter Herbert Rice |
| ATK, INC., et al., | : | Magistrate Judge Sharon L. Ovington |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff, Ayman Amara, brings this case through counsel claiming his former employer, ATK, Inc. discriminated and retaliated against him in violation of his rights guaranteed under federal and state law during his fourteen-month tenure with the company. Plaintiff originally filed two *pro se* complaints addressing the same events.[2] The Complaints name ATK, Inc. (ATK) as a defendant in addition to four other individual employees working at ATK: Robert Henderson, Brian Barber, Kevin Cromer, and Dennis Walstrum. Both cases were subsequently consolidated.

This matter is before the Court upon Defendants Motion to Dismiss (Doc. # 4),

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.
[2] Case Number: 3:08 CV 0378, hereinafter referred to as ("Complaint 1"); Case Number: 3:08 CV 0427, hereinafter referred to as ("Complaint 2").

Plaintiff's Response (Doc. # 16) and Defendants Reply (Doc. # 17). In his Response, Plaintiff, through counsel, concedes that the following claims should be dismissed: Plaintiff's claim for age discrimination in its entirety; all of the Ohio public policy claims pled by Plaintiff except for the common law claim of workers compensation retaliation; all claims against the individual Defendants (Henderson, Barber, Walstrum and Comer) that are predicated on Title VII, the American with Disability Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") and those based on Ohio Revised Code §4123.90 or common law public policy that creates a cause of action for retaliation for participation in Ohio's workers compensation scheme; and Plaintiff's claim against all Defendants based on Ohio's criminal falsification statute. (Doc. # 16 at 1-2).

There are two remaining claims in contention: first, whether a claim under Ohio common law based on public policy addressing retaliation for filing a workers' compensation claim is precluded by Ohio Revised Code § 4123.90, and second, whether individual liability exists under Ohio law for violations of Ohio Revised Code§ 4112.

## II.     BACKGROUND

Mr. Amara began working for ATK, Inc. in August 2005 as a senior structural and material engineer at ATK's Dayton location.  On November 17, 2005, Mr. Amara reported slipping on ice on ATK property when he was coming to work that morning. This incident led to Mr. Amara filing a workers' compensation claim in December 2005. While Mr. Amara was waiting for a decision from the Bureau of Workers' Compensation

(BWC), he continued to work, and he received excellent feedback from his May 2006 performance evaluation from the company. In June 2006, the BWC held a hearing about Mr. Amara's claim and eventually awarded his claim. ATK appealed the decision in July 2006. At the end of July, Mr. Amara went to Defendant Henderson's office to discuss his workers' compensation case, which ultimately led to Mr. Amara filing the false imprisonment claim against Mr. Henderson. On August 4, 2006, Mr. Amara went on ATK's short term disability plan, and in September 2006 he had knee surgery. Mr. Amara returned to work on October 2, 2006. However, on October 30, 2006, ATK severed Mr. Amara's employment with the company claiming performance deficiencies. The complaints filed against Defendants are in response to events that occurred over the approximate fourteen month time period Mr. Amara worked at ATK.

### III. MOTIONS TO DISMISS

To determine whether a Complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

To state a plausible, non-speculative claim, the Complaint need only set forth a short and plain statement of the claim showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a). This does not require detailed factual allegations, yet it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct.1937, 1949 (2009)(*Twombly* citations omitted); *see Eidson v. State of Tn. Dept. of Children's Svs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("[A] complaint must contain either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory.... Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

"In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, __U.S. at __, 129 S.Ct. at 1950.

### IV. ANALYSIS

    **A.** **Ohio public policy common law claim for workers'**

### compensation retaliation

Plaintiff argues that he is entitled to both statutory and public policy common law relief in regard to his claim that ATK retaliated against him for filing a workers' compensation claim. Defendants contend that dismissal of the Ohio public-policy claim is appropriate because § 4123.90 of the Ohio Revised Code provides the sole relief to the claim. Defendants are correct. The Ohio Supreme Court has declared that § 4123.90 is the exclusive remedy for employees wrongfully terminated while receiving workers' compensation. In *Bickers v. Western & Southern Life Ins. Co.*, the Ohio Supreme Court held:

> we hold that an employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act.

*Bickers*, *supra* at 116 Ohio St. 3d 351, 357, 879 N.E.2d 201, 207 (2007). Prior to reaching this conclusion, the Ohio Supreme Court alalyzed the Workers' Compensation Act and recognized the intent to balance the interests of employees with the interest of the employers. The Court stated:

> the Act 'operates as a balance of mutual compromise. . . whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability.

*Id*. at 356. The court recognized that the Ohio General Assembly chose to ban

5

retaliatory discharges, and stated, "[w]e may not override this choice and superimpose a common-law, public policy tort remedy on this wholly statutory system." *Id.* at 357.

Plaintiff asserts two arguments explaining why *Bickers* does not apply to this case, and therefore, should not block the common law remedy. First, Plaintiff distinguishes that the plaintiff in *Bickers* failed to meet the statutory procedural requirements thus banning the ability to bring forth either claim. (Doc. # 16, 7). Plaintiff argues that he did meet the procedural requirements of § 4123.90 and has a right to bring both claims against Defendants. (*Id*.) However, the main focus of the Ohio Supreme Court in *Bickers* contradicts Plaintiff's distinction. *Bickers* explained that when the Ohio General Assembly decided to establish a workers' compensation statute, the statute was supposed to "[supplant] rather than [amend]...the...common-law remedies." 116 Ohio St. 3d at 356. The Workers' Compensation Act created a compromise between the employee's and employer's interests, and again, this compromise required employees to "relinquish their common law remedy." *Id.* The fact that the plaintiff in *Bickers* did not meet the statutory procedural requirements is irrelevant to this case because that only means she lost her chance to assert her claim under the statute. And the fact that Plaintiff did meet the statutory requirements just guarantees he can make a claim under the statute.

Next, Plaintiff asserts that *Bickers* only applies to "dismissals of employees due to *non-retaliatory* reasons." (Doc #16, 8) In *Bickers*, the Ohio Supreme Court does state the statute precludes the ability to bring forth a common law public policy claim for dismissal

6

for non-retaliatory reasons in one part of the decision[3]; however, the weight of the argument made in *Bickers* indicates that the statute was intended to replace the common law cause of action. In furtherance, § 4123.90 specifically bans retaliatory discharges.[4] Moreover, Ohio appellate courts have interpreted *Bickers* to completely ban all retaliatory common law claims for wrongful discharge in violation of public policy. *See*, *Mortenson v. Intercont'l Chem. Corp.*, 178 Ohio App.3d 393 (1st Dist. 2008); *McDannald v. Robert L. Fry & Assocs.*, No. CA2007-08-027, 2008 Ohio App. Lexis 3522 (12th Dist. Aug. 18, 2008); *Cunningham v. Steubenville Orthopedics & Sports Med., Inc.*, 175 Ohio App.3d 627, 888 N.E.2d 499 (7th Dist. 2008).

The ruling in *Bickers* and the interpretation and application of that case by Ohio appellate courts indicate that dismissing the common law claim based on public policy is appropriate.

**B.** **Claims against individual Defendants under O.R.C. § 4112**

Plaintiff's second argument in contention alleges that both Complaints contain

---

[3] "we also hold that the constitutionally sanctioned, and legislatively created, compromise of employer and employee interests reflected in the workers' compensation system precludes a common-law claim of wrongful discharge in violation of public policy when an employee files a workers' compensation claim and is discharged for ***nonretaliatory*** reasons." *Bickers*, 116 Ohio St. 3d at 355-56.

[4] "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury. . .which occurred in the course of and arising out of his employment with that employer."

7

sufficient facts that demonstrate the individual Defendants discriminated against Plaintiff based upon national origin and disability in violation of Ohio Revised Code Annotated § 4112.02. This argument is not well taken. The applicable statute, Ohio Revised Code Annotated § 4112.02, forbids an employer from taking any discriminatory actions against a person relating to employment.[5] The Ohio Supreme Court in *Genaro v. Central Transport, Inc*. stated that individual managers and supervisors can be held accountable for their own discriminatory actions taken against a person in violation of § 4112.02. 84 Ohio St. 3d 293, 703 N.E.2d 782 (1999). Both parties agree that the individual supervisors and managers can be accountable if they discriminated against Plaintiff on their own. However, the issue at this early stage in the litigation is whether or not Plaintiff pled sufficient facts in both Complaints to reasonably infer that these individuals acted unlawfully. After carefully reading both Complaints, it is evident that the Complaints are void of sufficient factual allegations to reasonably infer the individuals discriminated against Plaintiff based on a disability or national origin.

In regards to discriminating based on national origin, Plaintiff has not pled sufficient facts in either Complaint to infer liberally in favor of Plaintiff that the individual Defendants discrimination based on national origin. The only person that

---

[5] "It shall be an unlawful discriminatory practice. . .[f]or any employer, because of. . .national origin, [or] disability. . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

seemed to even address Plaintiff's nationality is not a Defendant in this case. (Compl. 2, ¶ 35). The allegation these individuals discriminated based on national origin seems to be just that, an allegation with no support.

Next, Plaintiff has not pled sufficient facts in either Complaint to infer that he was discriminated by the Defendants based on a disability. Plaintiff does not refer to any specific disability he was laboring under in either Complaint. There is no doubt Plaintiff had negative consequences after falling in the work related incident[6], but the Complaints are devoid of alleging a disability he may have had before the incident or resulting from the incident. In regard to a possible injury or disability, Plaintiff alleged he felt pain in his hip and knee after he fell in the November 17, 2005 incident, and in Complaint 2, Plaintiff alleged his workers' compensation claim related to a shoulder injury. (Compl. 2, ¶ 36-37). Then, Plaintiff alleges he had surgery on his knee in September. (Compl. 1, ¶ 40; Compl. 2, ¶ 60). At this stage of the litigation it is unnecessary for Plaintiff to prove he had a disability recognized under the statute[7]; however, it is necessary for this Court to be able to point to something Plaintiff is claiming to be a disability that led the individual Defendants to treat him in a discriminatory way, separate and distinct from the retaliation

---

[6] Compl. 1, ¶ 15, 16, 18, 24; Compl. 2, ¶ 26, 27, 30, 41, 59.

[7] Under Ohio Revised Code Annotated § 4112.01, disability is defined as
    a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing speaking, breathing, learning, and working. . . .

9

he may have received for filing a workers' compensation claim. Even if it is liberally inferred that Plaintiff suffered from a disability, the Complaints do not sufficiently meet the pleading standard against each Defendant.

The conclusory statements alleging each individual defendant was a decision maker in Plaintiff's termination is not enough under *Twombly* or *Iqbal* to reasonably assume he was terminated because of national origin or disability. Paragraphs 102-105 from Complaint 2 are cited in Plaintiff's Response to Defendants' Motion to Dismiss claiming these statements alone are enough to defeat a 12(b)(6) motion. (Doc. # 16, 10). Essentially each paragraph states that "upon information and belief" each individual defendant was a decision maker in Plaintiff's termination. These paragraphs read alone do not connect Defendants' discriminatory conduct with Plaintiff's termination, but only plainly state Plaintiff believes each Defendant played a role in his termination. These allegations point to the adverse action Plaintiff believed to be taken against him based on national origin or disability, but based on *Iqbal* and *Twombly*, these statements are no longer sufficient to satisfy the notice pleading requirements. Again, the Supreme Court has stated that courts are not bound to assume legal conclusions are true; conclusive statements must be accompanied by factual allegations. *Iqbal*, 129 S. Ct. at 1950 (Citing *Twombly*, 550 U.S. at 570).

Plaintiff next points to specific allegations in his Response to Defendants' Motion to Dismiss that he claims is enough to defeat the Motion and show each Defendant acted adversely and created adverse conditions of employment. (Doc. # 16, 10-12). Plaintiff

states that Defendant Kevin Comer was a decision maker in his termination in addition to creating adverse conditions of employment against Plaintiff because of his disability. However, it cannot be inferred from the factual allegations made against Defendant Comer that he was discriminating against Plaintiff in any way. Plaintiff cites Complaint 2 paragraphs 60-61 to support his assertion. (Doc. #16, 12). Paragraph 61 states, "[a]fter surgery, Mr. Amara showed at ATK on a [rumor] about his critical employment. Comer had advised him to get home and obtain a release from doctor." Without more background information regarding the incident that produced this statement, it cannot be assumed that this statement is evidence of Defendant Comer's own discriminatory conduct based on Plaintiff's disability that contributed to any adverse condition, privilege, or matter directly or indirectly related to Plaintiff's employment at ATK. On its face, the statement seems to indicate that Plaintiff needed to get a release from his doctor to be at work. There is no other allegation made in either Complaint against Defendant Comer that suggests that he discriminated against Plaintiff on his own account. This sole factual allegation coupled with the conclusion Plaintiff believed Defendant Comer was a decision maker is not enough to make it facially plausible, and without more, Plaintiff has not met the pleading standard regarding this particular claim against Defendant Comer.

Both Complaints allege that Defendant Robert Henderson was also a decision maker in Plaintiff's termination. However, the facts pled regarding Defendant Henderson do not allow for a reasonable inference that he played any role in his termination or that he acted adversely toward Plaintiff based on a disability. Rather, the facts seem to imply

11

Defendant was acting adversely toward Plaintiff in retaliation for filing a workers' compensation claim. Defendant Henderson is the head of the Human Resources division at Dayton's ATK branch. Paragraphs 30-38 in Complaint 1, specifically address Defendant Henderson's behavior toward Plaintiff. Paragraph 30 states that Defendant Walstrum informed Plaintiff that he directed Defendant Henderson to reverse the appeal on the workers' compensation claim; however, the next paragraph asserts that Plaintiff believed Defendant Henderson still had not notified the Bureau of Workers' Compensation three days after he was told to reverse the claim. In paragraphs 50-55 in Complaint 2, Plaintiff addresses an encounter with Defendant Henderson in his office regarding the delay of reversing the appeal. These paragraphs seem to indicate that Defendant Henderson was threatening him for asserting his rights under the workers' compensation system. Following up these factual allegations, Plaintiff states that Defendant Henderson resented that he had filed a workers' compensation. All the factual allegations in both complaints assert Defendant Henderson was retaliating against Plaintiff for filing a workers' compensation claim. There are no facts pled that could reasonably imply Defendant Henderson had discriminated against Plaintiff because of an alleged disability.

     Plaintiff asserts that Defendant Brian Barber also committed personal acts of discrimination in violation of § 4112.02. Defendant Barber was Plaintiff's supervisor when Plaintiff returned from leave after his knee surgery. Plaintiff alleges on October 25, 2006, Defendant Barber asked him to meet at a time that conflicted with a therapy

12

session.  Also, Plaintiff alleges that Defendant Barber told him he "had to stay for the meeting or he would face the consequences."  (Compl. 1, ¶ 52; Compl. 2, ¶ 73).  Plaintiff went to the therapy session.  (Compl. 1, ¶ 53; Compl. 2, ¶ 74).  In Complaint 2, Plaintiff then states he was told to leave by both Defendant Barber and Defendant Walstrum on October 30, 2006 after Plaintiff received word his latest job performance for ATK was unsatisfactory.  (Compl. 2, ¶ 74, 75, 78).  He was terminated from the company on that day.  The Complaints do allege facts that allow for a reasonable inference that Defendant Barber played a role in Plaintiff's termination considering he was his supervisor at the time and he was present at the time Plaintiff was asked to leave, but the factual allegations by Plaintiff fall short of indicating these acts had anything to do with Defendant's discriminatory intent.  These allegations may be consistent with discrimination if they were connected to an identified disability or further accompanied by other allegations, but without more, it is not reasonable to assume Defendant Barber was acting in a discriminating manner toward Plaintiff.  Although conceivable, these factual allegations are not enough to make the claim of discrimination plausible.  (Quoting *Iqbal*, 129 S. Ct. at 1951 (citing *Twombly*, 550 U.S. at 570)).

     Lastly, Plaintiff asserts that Dennis Walstrum personally violated § 4112.02.  Mr. Walstrum is the Vice President of Dayton's branch of ATK and is the individual that fired Plaintiff.  The facts pled regarding Defendant Walstrum do not allow for a reasonable inference that he fired Plaintiff based on his disability.  In both Complaints, Plaintiff alleges that Defendant Walstrum was disinterested and rude when Plaintiff approached

13

him about his workers' compensation case. (Compl. 1, ¶ 29; Compl. 2, ¶ 47). Plaintiff then asserts he did not feel welcome back after he returned from leave after having surgery. (Compl. 1, ¶ 42; Compl. 2, ¶ 63). Plaintiff alleges that Mr. Walstrum called him into a meeting on October 2, 2006 where he called him a "troublemaker, causing trouble for everybody in the company." (Compl. 1, ¶ 43; Compl. 2, ¶ 64). Plaintiff alleges the he was given a work assignment, which he felt was a "no-win situation" for him. In addition, Plaintiff claims he believed Defendant Walstrum was ready to fire him once he had an excuse. (Compl. 1, ¶ 57; Compl. 2, ¶ 78). Defendant Walstrum fired Plaintiff on October 30, 2006 after his supervisor, John Norman, found his work on a project unsatisfactory. (Compl. 1, ¶ 56-57; Compl. 2, ¶ 75-78). Again, without identifying a disability and alleging a fact that Defendant Walstrum acted in an adverse manner because of the disability, it is not sufficient to merely state he was terminated because of a disability.

However, Plaintiff correctly observes that Defendants have yet to file an Answer in this matter and Fed. R. Civ. R.15 provides for an amendment of the Complaint as a matter of course. Accordingly, Plaintiff should file an Amend Complaint addressing the deficiencies set forth herein.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (Doc. # 4) should be **GRANTED**. By agreement of the parties the following claims should be dismissed with prejudice:

14

a. Plaintiff's claim for age discrimination in its entirety.

   b. All of the Ohio public policy claims pled by Plaintiff except for Plaintiff's Ohio public policy claim for workers' compensation retaliation.

   c. All claims against the individual Defendants predicated on Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, and those based on Ohio Revised Code Annotated § 4123.90, or common law public policy that creates a cause of actions for retaliation for participation in Ohio's workers' compensation scheme.

   d. Plaintiff's claim against any or all of the Defendants based on Ohio's criminal falsification statute, Ohio Revised Code Annotated § 2921.13.

2. The Ohio common law public policy claim for workers' compensation retaliation be **DISMISSED** with prejudice**,** and

3. Claims against Defendants Henderson, Comer, Barber, and Walstrum under Ohio Revised Code § 4112.02 be **DISMISSED** without prejudice to Plaintiff filing an Amended Complaint.


August 5, 2009

   s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).